**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

LANZATECH GLOBAL, INC.,               :

                                        :  Case No. 1:24-CV-6362 (JPO)

                Plaintiff,      :

                                        :

              -against-      :

                                        :

VELLAR OPPORTUNITY FUND SPV LLC –  :
SERIES 10,                        :

                                        :

              Defendant.     :

-------------------------------------------------------------------x

## <u>AMENDED COMPLAINT</u>

Plaintiff LanzaTech Global, Inc. ("LanzaTech"), by its attorneys Simpson Thacher & Bartlett LLP, sues Defendant Vellar Opportunity Fund SPV LLC – Series 10 ("Defendant"), and alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.      This is an action for breach of contract arising from Defendant's breach of a forward purchase agreement entitled Confirmation Re: OTC Equity Prepaid Forward Transaction, dated February 3, 2023 (the "FPA").  LanzaTech also pleads Defendant's breach of the covenant of good faith and fair dealing and unjust enrichment.

2.      On February 3, 2023, Defendant entered into an Assignment and Novation Agreement, to which the FPA was attached as Exhibit A, pursuant to which Defendant assumed a portion of the duties and obligations of a third party (the "Assignor").  The Assignment and Novation Agreement, with the FPA attachment, is attached hereto as Exhibit A.

1

3.      Pursuant to the FPA, and as a result of the Assignment and Novation Agreement, Defendant, referred to throughout the FPA as the "Seller," is required to hold shares known as Recycled Shares for the benefit of LanzaTech, with limited exceptions described below.

4.      Pursuant to the FPA, Defendant is prohibited from selling Recycled Shares unless the sale is noticed as part of an Optional Early Termination.  In the event of a sale of Recycled Shares subject to an Optional Early Termination, Defendant must provide notice to LanzaTech of the termination and must compensate LanzaTech $10.1574 for each share sold.

5.      Contrary to its obligations under the FPA, Defendant sold a significant portion of its Recycled Shares without providing any notice or any consideration to LanzaTech.  Indeed, Defendant has admitted that it sold Shares prior to September 2023.

6.      Defendant's sale of LanzaTech shares put pressure on LanzaTech's stock price. Pursuant to the FPA, if LanzaTech's stock remains below a certain price for a sustained period of time, as defined in the Seller VWAP Trigger Event section of the FPA, Defendant is entitled to send LanzaTech a notice of a Seller VWAP Trigger Event setting the Valuation Date, triggering the date on which LanzaTech is obligated to pay the Maturity Consideration and the Share Consideration defined in the FPA.

7.      On July 22, 2024, Defendant sent LanzaTech a notice of a Seller VWAP Trigger Event setting July 22, 2024 as the Valuation Date.

8.      Defendant sold shares in contravention of the FPA, which put pressure on LanzaTech's share price; Defendant was aware that pressure on LanzaTech's share price could lead to a Seller VWAP Trigger Event; Defendant was aware that Assignor also has a right to notice a Seller VWAP Trigger Event; and Defendant in fact issued a notice of Seller VWAP Trigger

Event.  Thus, Defendant was well aware of the potential collateral consequences of its sales of LanzaTech shares and took advantage of the pressure its sales placed on LanzaTech's stock price.

9.  LanzaTech suffered damages from the lack of notice and lack of payment by Defendant in connection with Defendant's sale of LanzaTech shares, as well as consequences from the pressure on LanzaTech's stock price resulting from Defendant's sales.

10.  Accordingly, LanzaTech brings this action to enforce its contractual right to payment by Defendant of the amount owed pursuant to the FPA, for damages caused by Defendant's breach, and for restitution based on Defendant's unjust enrichment.

## **PARTIES**

11.  Plaintiff LanzaTech is incorporated under the laws of the State of Delaware and has its principal place of business at 8045 Lamon Avenue, Skokie, Illinois.

12.  Defendant Vellar Opportunity Fund SPV LLC – Series 10 is a limited liability company organized under the laws of Delaware.  Vellar represented in its Notice of Removal (ECF No. 1) that (i) its sole member is Vellar Opportunities Fund Master, Ltd., a Cayman Islands exempted corporation; (ii) Vellar Opportunities Fund Master, Ltd. has two directors—Solomon Cohen and Daniel Cohen; and (iii) Solomon Cohen is domiciled in Florida and has not directed Vellar Opportunities Fund Master, Ltd.'s activities from Delaware, Illinois, or New York.  On subsequent meet and confers, Defendant represented to LanzaTech that Daniel Cohen is also domiciled in Florida.

## **JURISDICTION AND VENUE**

13.  This Court has jurisdiction over LanzaTech's claims pursuant to 28 U.S.C. §

1332(a)(1) because, based on Defendant's representations, there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Defendant because Defendant directly and/or through its members, conducts continuous and systematic business in New York.

15.     Venue is proper pursuant to the Assignment and Novation Agreement, whereby LanzaTech and Defendant contractually agreed, before this action was commenced, that any proceeding pertaining or related to the Assignment and Novation Agreement would be heard solely in the State and/or Federal courts located in New York City.

**STATEMENT OF FACTS**

**A.     The Assignment and Novation Agreement**

16.     On February 3, 2023, Assignor entered into an agreement with LanzaTech NZ, Inc. and AMCI Acquisition Corp. II for a share forward transaction.  That share forward transaction was in connection with the merger between AMCI Acquisition Corp. II and LanzaTech NZ, Inc., which would result in Plaintiff LanzaTech Global, Inc. as the surviving company.

17.     Also on February 3, 3023, Defendant entered into an Assignment and Novation Agreement with LanzaTech NZ, Inc., AMCI Acquisition Corp. II, and Assignor with respect to a portion of shares that were subject to purchase by Assignor pursuant to the FPA from third parties through a broker in the open market.

18.     Defendant assumed "all of Assignor's rights, duties and obligations under the Forward Purchase Agreement with respect to the Novated Amount, which constitutes fifty percent (50%) of the Maximum Number of Shares," and Defendant "accept[ed] the assignment and

4

assume[d] all of Assignor's obligations under the Forward Purchase Agreement in respect to" that portion of the Shares. Ex. A (Assignment and Novation Agreement) at § 1.1.

19.    Thus, as of February 3, 2023, Defendant was bound by the terms of the FPA.

20.    The parties agreed that the Assignment and Novation Agreement "shall be construed solely in accordance with the laws of the State of New York, notwithstanding its choice or conflict of law principles," and that "any proceedings arising among the Parties in any matter pertaining or related to this Agreement shall, to the extent permitted by law, be heard solely in the State and/or Federal courts located in New York City." *Id.* (Assignment and Novation Agreement) at § 8.

### B.    The Forward Purchase Agreement

21.    The FPA distinguishes between "Shares" and the narrower category "Recycled Shares." "Shares" are defined (after the close of the merger between AMCI Acquisition Corp. II and LanzaTech NZ, Inc.) as "the shares of common stock, par value $0.0001 per share, of LanzaTech Global, Inc." *Id.* (FPA) at "Shares."

22.    "Recycled Shares" are defined as "[t]he number of Shares purchased by [Defendant] from third parties (other than [LanzaTech]) through a broker in the open market." *Id.* (FPA) at "Recycled Shares."

23.    The FPA makes clear that Defendant will hold the Recycled Shares for the benefit of LanzaTech, providing that "Seller will hold the Recycled Shares in a bankruptcy remote special purpose vehicle for the benefit of [LanzaTech]." *Id.* (FPA) at "Shares."

24.    The FPA permits Defendant to sell Shares, but such sales could be made only "[s]ubject to any restrictions set forth in" the FPA. The referenced restrictions on sales of Shares include both the requirement that Defendant hold the Recycled Shares for the benefit of LanzaTech

5

(referenced in the FPA as the Counterparty), and the limited circumstances set forth in the FPA in which Defendant can permissibly sell Recycled Shares.  The FPA states as follows:

**Transactions by Seller in the Shares**

(a) Seller hereby waives the redemption rights ("Redemption Rights") set forth in the Certificate of Incorporation in connection with the Business Combination with respect to the Recycled Shares only during the term of this Confirmation. ***Subject to any restrictions set forth in this Confirmation,*** Seller may sell or otherwise transfer, loan or dispose of any of the Shares or any other shares or securities of the Counterparty in one or more public or private transactions at any time. Any Recycled Shares that are not Shortfall Sale Shares sold by Seller during the term of the Transaction will cease to be included in the Number of Shares.

(b) ***No sale of Shares by Seller shall terminate all or any portion of this Confirmation (unless Seller issues a Shortfall Sale Notice or OET Notice within the deadlines contemplated in sections entitled Shortfall Sales and Optional Early Termination above)***, and provided that Seller complies with all of its other obligations hereunder nothing contained herein shall limit any of Seller's purchases and sales of Shares.

*Id.* (FPA) at "Transactions by Seller in the Shares" (emphasis added).

25.     The FPA provides two options for Defendant to sell Recycled Shares: (1) pursuant to a Shortfall Sale Notice; or (2) pursuant to an Optional Early Termination (OET) Notice.  *See id*. at "Prepayment Shortfall Consideration" ("A sale of Shares is ***only*** (a) a Shortfall Sale . . . and (b) an Optional Early Termination . . . when an OET Notice [ ] is delivered") (emphasis added).

26.     A shortfall exists only where LanzaTech exercises the option not to pay the full Prepayment Amount, as defined in the FPA.  Because LanzaTech paid the full Prepayment Amount, there was no Prepayment Shortfall.  Defendant's sales of Recycled Shares thus could not have been Shortfall Sales.

27.     Nor did Defendant exercise its right to sell Recycled Shares as part of an Optional Early Termination, the only other mechanism that allows Defendant to sell Recycled Shares while the FPA remains in effect.  An Optional Early Termination occurs only if Defendant provides written notice to LanzaTech:

> From time to time and on any date following the Business Combination (any such date, an "OET Date") and subject to the terms and conditions below, [Defendant] may, in its absolute discretion, terminate the Transaction in whole or in part *so long as [Defendant] provides written notice to [LanzaTech] (the "OET Notice")*, no later than the later of (a) the third Local Business Day following the OET Date and (b) the first Payment Date after the OET Date which shall specify the quantity by which the Number of Shares is to be reduced.

*Id.* (FPA) at "Optional Early Termination" (emphasis added).

28.    On the OET Date, LanzaTech is "entitled to an amount from the Seller, and the Seller shall pay to [LanzaTech] an amount equal to the product of (x) the number of Terminated Shares and (y) the Reset Price." *Id.* The Terminated Shares are those Recycled Shares that are subject to the OET Notice. Reset Price is generally equivalent to the Initial Price, which is calculated as set forth in Article 9.2(a) of the AMCI Acquisition Corp. II Amended and Restated Certificate of Incorporation, effective as of August 3, 2021, and equal to $10.1574 per share. *Id.* (FPA) at "Reset Price."

29.    The FPA incorporates by reference the following non-waiver clause set forth in the 2002 ISDA Master Agreement and attached as Exhibit B:

> A failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege will not be presumed to preclude any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege.

Ex. B (ISDA 2002 Master Agreement) at 9(f).

### C.  Defendant Agreed That It Could Sell Recycled Shares Only With an OET Notice

30.    The FPA provided Defendant with the ability to preview all public disclosures by LanzaTech relating to the share forward transaction:

> *Disclosure*. [LanzaTech] agrees to comply with applicable SEC guidance in respect of disclosure and [LanzaTech] shall preview with [Defendant] all public disclosure relating to the Transaction and shall consult with [Defendant] to ensure that such public disclosure, including the press

7

> release, Form 8-K or other filing that announces the Transaction adequately discloses the material terms and conditions of the Transaction in form and substance reasonably acceptable to [Defendant] . . . .
>
> Ex. A (FPA) at "Disclosure."

31. Accordingly, on February 3, 2023, LanzaTech provided Defendant with a draft Form 8-K and requested responses in the form of comments or questions.

32. Between February 3, 2023 and February 6, 2023, LanzaTech provided Defendant with subsequent versions of the draft Form 8-K incorporating the comments it received, and provided further opportunity for Defendant to comment. LanzaTech filed the Form 8-K on February 6, 2023. The final Form 8-K disclosed that "[u]nless in connection with an optional early termination, [Defendant] has agreed to hold the Recycled Shares in a bankruptcy remote special purpose vehicle for the benefit of [LanzaTech]." Ex. C (AMCI Acquisition Corp. II Form 8-K, filed on February 6, 2023).

### D. Defendant's Breach of the FPA

33. Pursuant to the FPA, Defendant and Assignor obtained 5,916,514 Recycled Shares, which, as provided in the FPA and disclosed in the Form 8-K, were to be held for LanzaTech's benefit.

34. In or around September 2023, Defendant approached LanzaTech to engage in discussions concerning the FPA. Around that time, LanzaTech learned that Defendant was potentially selling Recycled Shares. LanzaTech requested that its financial advisor, who had been involved in structuring the FPA, convey to Defendant that any sales of Recycled Shares should cease, as such sales would be in breach of the FPA. Discussions between LanzaTech and Defendant about the FPA did not continue at that time.

35.     Upon information and belief, in June 2024, despite receiving notice that it should not sell shares, Defendant sold a significant portion of its LanzaTech shares without providing an OET Notice.

36.     Pursuant to the FPA, a Seller VWAP Trigger Event occurs:

[I]f the VWAP Price is below … (ii) if the Counterparty has repaid the Prepayment Shortfall in full, then (1) $2.00 per Share for any 50 trading days during a 60 consecutive trading day-period that ends during the first 90 days after the date of this Confirmation, and (2) $3.00 per Share thereafter.

*Id.* (FPA) at "Seller VWAP Trigger Event."

37.     Defendant has the sole discretion to issue a notice of a Seller VWAP Trigger Event, and to set the Valuation Date which triggers the date on which LanzaTech must pay the Maturity Consideration and the Share Consideration.  *Id.* (FPA) at "Valuation Date."

38.     On July 1, 2024, Defendant sent LanzaTech a "VWAP Trigger Event Statement," informing LanzaTech that "the daily VWAP Price of LNZA shares was below $3.00 for 50 out of 60 consecutive trading days."  Defendant stated that the "notice is for purpose of providing information and [Defendant] is not calling for the Maturity Consideration to be due and payable at this time."  Defendant further requested a call with LanzaTech to "discuss the path forward."

39.     On July 9, 2024, Defendant admitted to LanzaTech that it had previously sold LanzaTech shares.  Defendant continued to purport that it desired to "achieve a mutually agreeable resolution of the FPA transaction."

40.     On July 22, 2024, Defendant sent LanzaTech a Seller VWAP Trigger Event notice, which therefore set July 24, 2024 as the date on which payment from LanzaTech was due.

41.     Defendant's sales of LanzaTech shares in breach of the FPA placed pressure on LanzaTech's stock price, which in turn impacted whether a Seller VWAP Trigger Event occurred under the FPA.  Consequently, the VWAP Price over the period described in the July 1 VWAP

9

Trigger Event Statement and subsequent July 22 Seller VWAP Trigger Event notice does not accurately reflect the true market value of the shares.

42.    Defendant knew that a Seller VWAP Trigger Event could occur as a result of pressure on LanzaTech's stock price, Defendant did in fact issue a notice of a Seller VWAP Trigger Event, and Defendant knew that Assignor has the same rights as Defendant to issue a notice of a Seller VWAP Trigger Event.  It was therefore entirely foreseeable that LanzaTech would be damaged by Defendant's sale of shares and the resulting pressure on LanzaTech's share price.

43.    Vellar issued the July 1 VWAP Trigger Event Statement and the subsequent July 22 Seller VWAP Trigger Event notice in order to put pressure on LanzaTech with respect to negotiations concerning the FPA.

44.    Therefore, upon information and belief, Defendant's significant sales of Recycled Shares constituted a breach of contract that resulted in damages to LanzaTech.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

45.    LanzaTech repeats and realleges each and every allegation contained in paragraphs 1 through 44 above as if fully set forth herein.

46.    Defendant breached the FPA by willfully selling Recycled Shares without issuing an OET Notice or providing LanzaTech any of the consideration that would have been due in connection with an Optional Early Termination.

47.    Defendant's sales of LanzaTech shares put pressure on LanzaTech's stock price, which contributed to Defendant's issuance of a Seller VWAP Trigger Event notice.

10

48.     LanzaTech has been damaged as a direct and proximate result of Defendant's willful and material breach of the FPA in an amount to be determined at trial, but not less than $30,000,000.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

49.     LanzaTech repeats and realleges each and every allegation contained in paragraphs 1 through 44 above as if fully set forth herein.

50.     Implicit in the FPA is the covenant of good faith and fair dealing requiring each party not to act to destroy or injure the right of another party to receive benefits of the contract. By entering into the FPA, Defendant implicitly agreed not to undermine the purpose of the FPA, which was in part to offer LanzaTech stability with respect to its shares, and therefore to sell shares only in limited circumstances.

51.     Defendant breached the implied duty of good faith and fair dealing by engaging in a pattern of behavior designed to deprive LanzaTech of the benefit of the bargain.

52.     Defendant's sale of LanzaTech Shares put pressure on LanzaTech's stock price. Following these sales, Defendant issued an informal July 1 VWAP Trigger Event Statement, encouraging LanzaTech to negotiate a resolution, and then a Seller VWAP Trigger Event notice on July 22.  Defendant's mercenary tactics, seeking to use as a benefit in negotiation a situation that Defendant in part caused, violate the covenant of good faith and fair dealing.

53.     As a result of Defendant's conduct, LanzaTech was unfairly prevented from receiving the benefits it was entitled to under the FPA.

54.     As the direct and proximate result of Defendant's willful breach of the implied covenant of good faith and fair dealing, LanzaTech suffered substantial damages in an amount to be proven at trial.

11

### THIRD CAUSE OF ACTION
### (In the Alternative, Unjust Enrichment)

55.    LanzaTech repeats and realleges each and every allegation contained in paragraphs 1 through 44 above as if fully set forth herein.

56.    LanzaTech is entitled to recover damages under a theory of unjust enrichment.

57.    As set forth above, Defendant admitted to selling Shares within the past year, in violation of the spirit of the FPA, which was intended in part to provide LanzaTech with security.

58.    Defendant's sales of Recycled Shares put pressure on LanzaTech's stock price, and Defendant took advantage of the impact of its own sales by issuing an informal July 1 VWAP Trigger Event Statement, and then a Seller VWAP Trigger Event notice on July 22.  These actions were intended to give Defendant leverage in future negotiations with LanzaTech concerning the FPA.

59.    Defendant therefore has benefitted, and continues to benefit, from its sales of Recycled Shares and equity and good conscience require Defendant to make restitution, including by disgorging all earnings, profits, and gains that Defendant has unjustly received.

### PRAYER FOR RELIEF

WHEREFORE, LanzaTech prays for relief and judgment, including:

a.    Actual damages for Defendant's breach of contract including accrued interest;

b.    Awarding compensatory and punitive damages against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

c.    Ordering declaratory, injunctive, and equitable relief as necessary and appropriate, including, inter alia, issuing a preliminary injunction prohibiting Defendant from further sales of LanzaTech stock in violation of the FPA and prohibiting

enforcement of the date for LanzaTech to pay Defendant the Maturity Consideration and the Share Consideration pursuant to Defendant's July 22, 2024 Seller VWAP Trigger Event notice;

d.  Awarding LanzaTech's counsel attorneys' fees, reimbursement of out-of-pocket litigation expenses, expert witness fees, and other costs pursuant to the Attorney and Other Fees provision in the FPA, as well as the common fund doctrine and/or any other applicable doctrine;

e.  Pre-judgment and post-judgment interest; and

f.  Awarding such other and further relief as may be just and proper.

Dated: New York, New York
September 30, 2024

SIMPSON THACHER & BARTLETT LLP


By  */s/ Craig S. Waldman*
    Craig S. Waldman
    Amy L. Dawson
    425 Lexington Avenue
    New York, NY 10017-3954
    Telephone: +1-212-455-2000
    Facsimile: +1-212-455-2502

    *Attorneys for Plaintiff LanzaTech Global, Inc.*

13