UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LANZATECH GLOBAL, INC.,
                  Plaintiff,

-v-

VELLAR OPPORTUNITY FUND SPV
LLC – SERIES 10,
                  Defendant.

24-CV-6362 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

LanzaTech Global, Inc. ("LanzaTech") brings this action against Vellar Opportunity Fund SPV LLC – Series 10 ("Vellar") for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment ("the LanzaTech Action"). Vellar brings a related action against LanzaTech for breach of contract ("the Vellar Action"). Before the Court is Vellar's motion to dismiss for failure to state a claim in the LanzaTech Action, as well as Vellar's motion for advancement of attorney's fees and expenses in the Vellar Action. For the reasons that follow, the motion to dismiss is granted in part and denied in part, and the motion for advancement of attorney's fees is denied without prejudice.

**I.    Background**

    **A.    Factual Background**[1]

The contract in question arises out of a merger between LanzaTech NZ, Inc. and AMCI Acquisition Corp. II ("AMCI"), which would result in LanzaTech as the surviving company.

---

[1] The following facts are taken from LanzaTech's amended complaint and are assumed true for purposes of resolving Vellar's motion to dismiss. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

(ECF No. 19 ("Am. Compl.") ¶ 16.)[2]  On February 3, 2023, AMC ARRT H LLC ("AMC") entered into a Forward Purchase Agreement ("FPA") with the merging companies for a share forward transaction.  (*Id.*)  On the same day, Vellar entered into an Assignment and Novation Agreement, pursuant to which it assumed a portion of AMC's obligations under the FPA and agreed to hold an amount of LanzaTech's shares acquired on the open market, referred to as "Recycled Shares."  (Am. Compl. ¶¶ 2, 22-23.)  The FPA specifies, under the definition of "Shares," that "[Vellar] will hold the Recycled Shares in a bankruptcy remote special purpose vehicle for the benefit of [LanzaTech]."  (ECF No. 19-1 ("FPA") at 11.))

A section of the FPA entitled "Transactions by Seller in the Shares" provides:

> [Vellar] hereby waives the redemption rights ("Redemption Rights") set forth in the Certificate of Incorporation in connection with the Business Combination with respect to the Recycled Shares only during the term of this Confirmation.  Subject to any restrictions set forth in this Confirmation, [Vellar] may sell or otherwise transfer, loan or dispose of any of the Shares or any other shares or securities of the [LanzaTech] in one or more public or private transactions at any time. . . . No sale of Shares by [Vellar] shall terminate all or any portion of this Confirmation . . . .

(FPA at 22.)  Although Vellar "irrevocably waived all redemption rights with respect to such Shares" (FPA at 11), upon the end of the contractual term, Vellar could return the shares to LanzaTech and receive a set value of Maturity Consideration (FPA at 14).

The FPA provides for Shortfall Sales, whereby if LanzaTech fails to prepay the full amount of the Recycled Shares that Vellar held, then Vellar may sell those Shares at a price at or above $10.00, without later returning those shares to LanzaTech.  (Am. Compl. ¶¶ 25-26; *see* FPA at 12-14.)  This provision is not at issue in this case because LanzaTech prepaid the full

---

[2] Unless otherwise noted, all docket cites refer to the LanzaTech Action docket, No. 24-CV-6362.  Docket cites preceded by "*Vellar*" refer to the Vellar Action docket, No. 24-CV-8061.

amount. (Am. Compl. ¶ 26.) Vellar may also partially or fully terminate the FPA upon notice and payment pursuant to the Optional Early Termination ("OET") provision. (FPA at 12-13.) If Vellar chooses to partially or fully terminate the FPA, Vellar may sell Recycled Shares, re-designated as "Terminated Shares," and no longer needs to return the now-Terminated Shares at the end of the contract term. (*Id.*) Further, the FPA provides that if the shares' volume-weighted average price ("VWAP") falls below a certain threshold for a sustained period, a "Seller VWAP Trigger Event" occurs, upon which Vellar can issue a notice and accelerate payment of Maturity Consideration. (*Id.* at 10, 14.)

> Finally, the FPA includes an Indemnification provision, which states:
>
> [LanzaTech] agrees to indemnify and hold harmless [Vellar] . . . from and against any and all losses . . . arising out of, in connection with, or relating to, investigating, preparing or defending against any litigation . . . between any of the Indemnified Parties and [LanzaTech] or between any of the Indemnified Parties and any third party, . . . arising out of or based upon the Transaction . . . . [LanzaTech] will not be liable under the foregoing indemnification provision to the extent that any loss, claim, damage, liability or expense is related to the manner in which [Vellar] sells, or arising out of any sales by [Vellar] of, any Shares, including the Recycled Shares . . . . In addition . . . , [LanzaTech] will reimburse any Indemnified Party for all reasonable, out-of-pocket, expenses (including reasonable counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense or settlement of any pending or threatened claim or any action, suit or proceeding arising therefrom . . . .

(*Id.* at 25-26.)

In or around September 2023, LanzaTech learned that Vellar had been potentially selling Recycled Shares and approached Vellar to demand that it cease the sales. (Am. Compl. ¶ 34.) Around June 2024, Vellar sold a significant portion of its Recycled Shares without providing an OET notice. (*Id.* ¶ 35.) On July 1, 2024, Vellar informed LanzaTech that a Seller VWAP Trigger Event had occurred, as LanzaTech's stock price had fallen below $3 for 50 out of 60 trading days. (*Id.* ¶ 38.) Vellar then proposed discussing "the path forward" with LanzaTech

and, on July 9, 2024, Vellar told LanzaTech that it had previously sold Recycled Shares but desired to "achieve a mutually agreeable resolution of the FPA transaction." (*Id.* ¶¶ 38-39.) On July 22, 2024, Vellar sent LanzaTech a notice stating that it was initiating the Seller VWAP Trigger Event, which required payment of the Maturity Consideration on July 24, 2024. (*Id.* ¶ 40.)

### B. Procedural History

The LanzaTech Action (No. 24-CV-6362) was removed to this Court on August 22, 2024. (*LanzaTech Global, Inc. v. Vellar Opportunity Fund SPV LLC - Series 10*, No. 24-CV-6362 (S.D.N.Y. Aug. 22, 2024), ECF No. 1.) LanzaTech filed an amended complaint on September 30, 2024, alleging breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. (Am. Compl.) On October 14, 2024, Vellar filed a motion to dismiss (ECF No. 20) and a supporting memorandum of law (ECF No. 21 ("Mem.")). LanzaTech filed an opposition to the motion on November 22, 2024. (ECF No. 29 ("Opp.").) Vellar filed a reply on December 13, 2024. (ECF No. 34 ("Reply").)

Vellar commenced the Vellar Action (No. 24-CV-8061) on October 23, 2024, alleging breach of the same FPA. (*Vellar Opportunity Fund SPV LLC - Series 10 v. LanzaTech Global, Inc.*, No. 24-CV-8061 (S.D.N.Y. Oct. 23, 2024), ECF No. 1.) In the Vellar Action, Vellar moved for advancement of attorney's fees on November 20, 2024 (*Vellar*, ECF No. 9) and filed a supporting memorandum of law (*Vellar*, ECF No. 10 ("MAF Mem.")). LanzaTech opposed Vellar's motion for advancement of attorney's fees on December 12, 2024. (*Vellar*, ECF No. 21. ("MAF Opp.")) Vellar replied in further support of the advancement motion on December 20, 2024. (*Vellar*, ECF No. 22 ("MAF Reply").) The LanzaTech action and the Vellar Action were consolidated on April 18, 2025. (ECF No. 43.)

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). In resolving a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). "Where, as in this case, certain contracts are integral to the complaint, we also consider those documents in deciding the merits of the motion." *Interpharm, Inc. v. Wells Fargo Bank*, 655 F.3d 136, 141 (2d. Cir. 2003) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002)).

## III. Discussion

### A. Breach of Contract

"To make out a viable claim for breach of contract a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted). The parties agree, and the FPA provides, that it is to be interpreted according to New York law. (Am. Compl. ¶ 15; FPA at 19.) New York contract law "give[s] effect to the intent of the parties as revealed by the language they chose to use." *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). If a contract is clear and unambiguous, it must be interpreted

5

"according to the plain meaning of its terms." *Hughes Commc'ns India Priv. Ltd. v. The DirecTV Grp., Inc.*, 71 F.4th 141, 148 (2d Cir. 2023) (internal quotation marks and citation omitted). However, "[w]hether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990). At the motion to dismiss stage, courts may dismiss a breach-of-contract claim only if "the terms of the contract are unambiguous." *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1165 (2d Cir. 2024) (quoting *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 13 (2d Cir. 2019)). When determining ambiguity, a court must consider the entire contract holistically to evaluate whether the language is "capable of more than one meaning when viewed objectively by a reasonably intelligent person" with knowledge of the subject area. *Id.* at 1165.

In this case, both LanzaTech and Vellar argue that the terms of the FPA are unambiguous, but their interpretations of the language are diametrically opposed.[3] LanzaTech argues that the FPA expressly forbids any sales of Recycled Shares absent either the non-applicable Prepayment Shortfall provision or the Optional Early Termination provision. (Opp. at 10.) Vellar argues that the language of the FPA unambiguously authorized Vellar to sell Recycled Shares at any point in time, so long as at the end of the contractual term Vellar held the number of Recycled Shares as decided at the beginning of the agreement. (Mem. at 6-7.) Vellar's view that it could sell Recycled Shares without giving an OET notice is the correct and unambiguous interpretation of the FPA.

---

[3] Both parties, despite contending that the contract is unambiguous, support their arguments with different pieces of extrinsic evidence, including the parties' SEC 8-K form, other corporations' FPAs, and SEC enforcement actions against an unrelated corporation. (*See* Mem. at 15-25; Opp. at 15.) The Court does not consider such extrinsic evidence at the motion to dismiss stage, because "[a]mbiguity is determined by looking within the four corners of the document, not to outside sources," and parties are precluded from using extrinsic evidence when a contract is unambiguous. *Flynn*, 120 F.4th at 1165-66.

In the "Transactions by Seller in the Shares" section, the FPA makes clear that "[s]ubject to any restrictions set forth in this Confirmation, [Vellar] may sell or otherwise transfer, loan or dispose of any of the Shares . . . in one or more public or private transactions at any time." (FPA at 22.) LanzaTech seeks to circumvent this express language by arguing that (1) Vellar's general right to sell "Shares" does not extend to the "Recycled Shares" in question; and (2) Vellar's right to sell shares is restricted by a definitional term in the FPA. (Opp. at 9-10.)

LanzaTech's distinction between "Shares" and "Recycled Shares" is unreasonable in light of the contractual definition. The FPA defines "Recycled Shares" as "[t]he number of Shares purchased by [Vellar] from third parties (other than [LanzaTech]) through a broker in the open market . . . ." (FPA at 11.) The plain language dictates that "Recycled Shares" are a subset of "Shares," and Vellar's right to sell Shares under the "Transactions by Seller in the Shares" provision logically and necessarily includes the sale of Recycled Shares. Therefore, any limitation on Vellar's right to sell Recycled Shares must come from "restrictions set forth in [the FPA]." (FPA at 22.)

LanzaTech identifies only one relevant purported restriction: In the definition of "Shares," the FPA provides that "[Vellar] will hold the Recycled Shares in a bankruptcy remote special purpose vehicle for the benefit of [LanzaTech]." (FPA at 11.) It is simply not reasonable to interpret that provision as prohibiting Vellar from selling Recycled Shares. Rather than more substantive provisions outlining the parties' obligations, a definition section in the FPA is an unlikely place for the parties to have imposed such a broad restriction on Vellar. The only fair and reasonable reading of this language is that it addresses *how* Vellar will hold any shares that it holds—as Vellar puts it, "the mechanics by which Vellar will hold Shares"—namely, in a "bankruptcy remote special purpose vehicle". (Mem. at 16.) Indeed, as Vellar points out, there

are multiple provisions of the FPA that contemplate the sale of shares in such a way as to contradict LanzaTech's interpretation. (FPA at 12-13; Mem. at 13.) Even LanzaTech's interpretation of the FPA permits the sale of shares under Prepayment Shortfall Sales and Optional Early Termination. (Reply at 5; *see* FPA at 12-13.) The OET section also describes Share sales outside of those two circumstances when it excludes from "Terminated Shares" "any sales of Shares that are designated as Shortfall Sales … or *any other Share sales*." (FPA at 13 (emphasis added).) Viewed in relation to the FPA holistically, the language regarding holding Recycled Shares for LanzaTech's benefit cannot reasonably be interpreted as a prohibition on sales of Recycled Shares.

Further, Vellar's interpretation of the FPA accords with "the rule of construction that a specific contract provision should prevail over a general one." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 179 (2d Cir. 2014). The provision that LanzaTech contends precludes Vellar from selling Recycled Shares does not mention the sale of shares at all. In contrast, Vellar's argument is supported by the specific "Transactions by Seller in the Shares" section in the FPA that governs the sale of shares by Vellar. (FPA at 22). While the FPA imposes certain express restrictions on Vellar's right to sell shares, including that all sales under the Shortfall Sale provision must be above a specific price, no such specific restriction is applicable here. (FPA at 12.) To read general uses of a phrase like "to the benefit of [LanzaTech]" as overriding the specific provisions on sales would be an unreasonable interpretation of the parties' agreement.

LanzaTech also ignores that there is a provision in the FPA that does specifically constrain Vellar's behavior. In the definition of "Recycled Shares," the FPA states that Vellar "shall have irrevocably waived all redemption rights with respect to such Shares." (FPA at 11.)

The FPA's constraint on Vellar's redemption right contrasts with its permissive language regarding Vellar's right to sell shares in the "Transactions by Seller in the Shares" section. (Mem. at 13; FPA at 22.)  The parties included express prohibitions on redemption of the Recycled Shares, and it is reasonable to infer that LanzaTech did not bargain for the same prohibition on selling shares.  *See MFW Assocs., LLC v. Plausteiner*, No. 15-CV-2513, 2016 WL 1246564, at *16 (S.D.N.Y. Mar. 24, 2016) (noting the canon of contract interpretation that "the expression of one thing implies the exclusion of the other").  To impute a restriction on the sales of shares without express language would contravene the admonition that "courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004) (internal quotation marks and citation omitted).

Because the FPA expressly permits Vellar's sale of LanzaTech shares at any time and no specific restriction applies here, Vellar has not breached the FPA by selling those shares. Accordingly, LanzaTech's breach of contract claim is dismissed.

   **B.  Good Faith and Fair Dealing**

"Under New York law, implicit in every contract is a covenant of good faith and fair dealing." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (internal quotation marks omitted).  This includes a promise that "neither party to a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (internal quotation marks and citation omitted).  When "a breach of contract claim, based upon the same facts, is also pled," an implied contract claim will be rejected as duplicative. *Harris v. Provident Life Ins.*, 310 F.3d 73, 81 (2d Cir. 2002).  This includes cases where the damages for

the party's implied contract claim are "identical to the damages they seek for the alleged breach of contract." *See EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 94 (S.D.N.Y. 2018). However, "a plaintiff can plead a claim for breach of the covenant of good faith and fair dealing where 'there is a dispute over the existence, scope, or enforceability of the putative contract.'" *Spencer-Smith v. Ehrlich*, 347 F.R.D. 606, 627 (S.D.N.Y. 2024) (quoting *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 263 (2d Cir. 1999)).

LanzaTech has alleged a sufficiently distinct basis for its good faith and fair dealing claim to avoid dismissal based on its being duplicative of its breach of contract claim, at least at this stage. (Am. Compl. ¶¶ 49-54.) LanzaTech alleges that Vellar sold a substantial amount of its shares strategically in order to manipulate the stock price and trigger the Seller VWAP Trigger Event, so that Vellar could "benefit in negotiation" around resolving more favorable terms in an already existing contract with LanzaTech. (*Id.* ¶¶ 35, 41, 43, 52; Opp. 16-17.) The conduct as alleged could rise to the level of sharp dealing intending to "injur[e] the right of [LanzaTech] to receive the fruits of the contract," even though Vellar did not breach the contract by selling Recycled Shares. *See Spinelli*, 903 F.3d at 205. The allegation regarding the ongoing negotiation between the parties is not present in the breach of contract claim. (Am. Compl. ¶ 52.) Although LanzaTech's good faith and fair dealing claim shares some facts with its breach of contract claim, the two claims are not necessarily duplicative because they can exist independent of each other factually and conceptually, rather than being slightly different narratives of identical events. *See Polcom USA, LLC v. Affiliated FM Ins. Co.*, 551 F. Supp. 3d 290, 297 (S.D.N.Y. 2021).

On the merits, LanzaTech's good faith and fair dealing claim is a closer question. Vellar's sale of the shares alone, even if it knew that the sale would decrease LanzaTech's share

price, cannot be the basis of a good faith and fair dealing claim, because "[a] breach of implied covenant claim cannot be based on conduct permitted under the contract." *See Golden Unicorn Enters., Inc. v. Audible, Inc.*, No. 21-CV-7059 (JMF), 2023 WL 4561718, at *9 (S.D.N.Y. July 17, 2023); *accord Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 93 (2d Cir. 2013). For similar reasons, Vellar's initiation of the Seller VWAP Trigger Event cannot be a violation of good faith and fair dealing, because it was a bargained-for provision of the FPA, and a good faith and fair dealing claim cannot "imply an obligation inconsistent with other terms of a contractual relationship." *See Gaia House*, 720 F.3d at 93. However, based upon the facts alleged by LanzaTech, the intentional use of price depreciation alongside the threat of using the Seller VWAP Trigger Event to gain an advantage in negotiations surrounding the continued FPA could be legally sufficient to constitute an attempt to "destroy[] or injur[e] the right of [LanzaTech] to receive the fruits of the contract" by changing the terms of the original agreement under pressure that Vellar created. *See Spinelli*, 903 F.3d at 205. Further, because a good faith and fair dealing claim is "ordinarily a question of fact to be determined by the jury or other finder of fact" and requires consideration of "any course of performance or course of dealing that may exist between the parties," *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007), this claim is properly resolved after discovery. Therefore, LanzaTech has stated a claim for breach of the implied covenant of good faith and fair dealing.

### C. Unjust Enrichment

To state an unjust enrichment claim, a plaintiff must plead "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 172 N.Y.S.3d 649, 658 (2022) (internal quotation marks omitted). Pursuant to Federal

Rule of Civil Procedure 8, courts allow plaintiffs to assert unjust enrichment claims "as pleadings in the alternative at the motion to dismiss stage," but only in cases "where the validity and scope of the contract is difficult to determine, where the parties dispute the existence of a contract, or where the claims arise out of agreements or understandings of the parties that were not expressly written in the contract." *Keybanc Cap. Mkts., Inc. v. Extreme Steel, Inc.*, 710 F. Supp. 3d 239, 247 (S.D.N.Y. 2024) (cleaned up).  Otherwise, when a valid and enforceable contract covers the same subject matter as the unjust enrichment claim, "recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009).

While LanzaTech is allowed to plead in the alternative, its unjust enrichment claim arises from the same subject matter covered by the contract.  (Am. Compl. ¶¶ 55-59.)  Whether one follows LanzaTech's or Vellar's interpretation of the FPA, the sale of LanzaTech shares and the Seller VWAP Trigger Event fall squarely within the scope of the FPA.  (FPA at 10, 22; *see* Am. Compl. ¶¶ 24, 35-43; Mem. at 5-9.)  The parties do not dispute the existence of an enforceable contract or that the claims here arise out of the FPA's provisions.  (*See* Mem. at 23-24; Opp. at 18-20.)  LanzaTech's unjust enrichment claim is therefore dismissed.

    **D.**  **Vellar's Motion for Advancement of Attorney's Fees and Expenses**

Courts "possess[] the inherent power to award fees pursuant to state law when . . . sitting in diversity" cases, so long such an award is in compliance with state law.  *Rekor Sys., Inc. v. Loughlin*, 2020 WL 6898271, at *4 (S.D.N.Y. Nov. 23, 2020) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975)).  In New York, an award of attorney's fees may be "authorized by agreement between the parties."  *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989).  However, when the proposed shifting of fees is from one party

of litigation to the other, the language must be "unmistakably clear" in providing that the contractual parties intend fee-shifting in litigation between them. *Id.* at 492.

Here, the FPA's language has the requisite clarity. The FPA provides that "[LanzaTech] will reimburse [Vellar] for all reasonable, out-of-pocket, expenses (including reasonable counsel fees and expenses) as they are incurred" by Vellar, including when the litigation "aris[es] out of any action between [Vellar] and [LanzaTech]." (FPA at 25.) The FPA also clearly contemplates that the costs will be reimbursed "as they are incurred." (*Id.* at 26.) However, the indemnification provision contains an exception: LanzaTech is not liable for attorney's fees if a claim or loss is "related to the manner in which [Vellar] sells, or arising out of any sales by [Vellar] of, any Shares, including the Recycled Shares." (FPA at 23.) LanzaTech argues that the Vellar Action arose from, or at least is related to, Vellar's selling of Recycled Shares. (MAF Opp. 5-7.) Vellar contends that the basis of its breach of contract claim—LanzaTech's refusal to pay Maturity Consideration after the Seller VWAP Trigger Event—has nothing to do with the sales of shares. (MAF. Mem. at 7-8; MAF Reply at 2-4.) LanzaTech responds that the Seller VWAP Trigger Event only occurred due to Vellar's sale of large numbers of shares, as alleged in LanzaTech's good faith and fair dealing claim. (MAF Opp. at 5.)

At this stage of litigation, it is premature for the Court to make a factual determination as to whether the exception applies, as the causal relationship between Vellar's sale of shares and the Seller VWAP Trigger Event goes to the heart of the parties' dispute. The Court declines to make a finding on this key fact before discovery. Accordingly, Vellar's motion for advancement of fees is dismissed without prejudice to renewal at a later stage of these proceedings.

**IV.     Conclusion**

For the foregoing reasons, Vellar's motion to dismiss in the LanzaTech Action is GRANTED as to the breach of contract and unjust enrichment claims and DENIED as to the

breach of implied covenant of good faith and fair dealing claim. Vellar shall file an answer to the surviving claim within 14 days after publication of this opinion and order. *See* Fed. R. Civ. P. 12(a)(4)(A).

Vellar's motion for advancement of attorney's fees in the Vellar Action is DENIED without prejudice.

The Clerk of Court is directed to terminate the motion at Docket Number 20.

The parties are directed to file a revised case management plan within 21 days after publication of this opinion and order.

SO ORDERED.

Dated: August 12, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge